Ruffin, Chief Justice.
 

 — It seems to this court that the question made, cannot arise in a Court of law. It is deemed therefore unnecessary to advert either to the facts tending to establish the covenous interest alleged by the plaintiff, or to the principles laid down by his honour for the government of the jury in reference to that question.
 

 The cases upon this subject have all been in the Court of Chancery, and the elementary books treat this as a doctrine and head of equity. There is no judgment at law in favour of the husband, and we think cannot be. The action could only be supported by viewing the husband as a purchaser for a valuable consideration, of his wife’s
 
 *15
 
 chattels; and therefore as a person upon 'whom on legal principles, a fraud can be committed. But the husband cannot be regarded as such a purchaser. Marriage, it is true, is a valuable consideration, when we speak of a consideration as necessary or adequate to raise an use, or to support an ante-nuptial settlement or contract. But independent of any contract specially touching the wife’s estate, the rights which the husband gains in that estate by the act of marriage solely, are not purchased by him in a legal sense, but conferred by the mere act and operation of law. The marriage is the only contract entered into by the parties. As a part, of the policy of the law, and as an incidental consequence of the relation contracted between the parties, the law gives to the husband in his own right, certain interests in his wife’s property. But he does not purchase any part of it, not even that to which she is entitled at the instant of the marriage, much less does he contract for the purchase of that which is not her’s then, but had been sold or given away by her before her marriage. “ The
 
 marriage
 
 is an absolute gift of all chattels personal, in the wife’s possession, in her own rightCo. Litt. 351, b.
 
 Om-nia quce sunt uxoris, sunt ipsius viri.
 
 But no more; he cannot get by the marriage what was not her’s at or during the coverture. Indeed he does not get the whole of what legally belongs to her, that is so as to divest her title and vest it in him in his own right. For things held by her
 
 en autre droit,
 
 and as Lord Coke expressly says, things in which she has not a property but a bare possession, as goods bailed to the feme, are not given to the husband. This is to be understood to mean in his own right, and exclusively for his own benefit. In respect to such things, he sues and is sued jointly with the wife ; and upon her death they do not survive to him.
 

 That the interest of the husband should be limited at law by that of the wife, as existing at the time of the marriage, or accruing during the marriage, is the necessary result of each of two legal maxims: that husband and wife make but one person, and therefore that which binds her, binds him; and that one to whom the law transfers a thing can thereby get no higher estate or greater interest
 
 *16
 
 than the person had, from whom it was taken by that law.
 

 In equity, a husband, except where the baseness of his motives in seeking, or of his practices in obtaining the marriage, excludes him from it, may have relief against the ante-nuptial voluntary bond or conveyance of his wife, made with the intent to prejudice him. In that Court they are to some purposes, and to this amongst others, regarded as distinct persons, and as having distinct and opposing rights; and he may be required to purchase her property, or considered as having purchased it. But no such case or principle is found at law.
 

 The counsel for the plaintiff however insisted upon the general observation, that upon questions of fraud, the jurisdiction of courts of law and equity is concurrent. In its generality, that position is inaccurate. As to many, and most cases, it is true; but there are numerous frauds which can be alleged, investigated and relieved against in equity only. Where a conveyance is not avoided by statute, and where the objection is grounded upon imposition in the treaty, and not upon undue and unlawful means used for obtaining the
 
 execution
 
 — the
 
 factum
 
 — of the particular instrument, relief in equity is most appropriate, and generally can be had there only. A Court of Equity can do complete justice in such cases, by holding the instrument to be securities for what was advanced upon the treaty, or done under the contract, while a Court of Law would be in danger of doing wrong to one of the parties at all events, by being obliged to pronounce the whole conclusively void, or valid for all purposes. But an exception to the maxim alluded to, must certainly be admitted in those cases in which a Court of law does not recognize the right, in derogation of which, the fraud was practiced. Whatever may be the allegations of fraud, he only can make them in any Court, who shows himself to that Court to have rights entitled to its protection. As the conveyance by the plaintiff’s wife was before the marriage, at law, the plaintiff could not by the marriage gain a property in the slaves conveyed; and therefore a Court of law cannot admit the supposition, that the conveyance was or could be in fraud of him.
 

 
 *17
 
 Upon the point of the statutes of limitation, 1715 and 1820, this Court concurs entirely with the Superior Court. The slaves were loaned by the defendant to his mother, until he called for them, which brings the case within the words of Lord Coke in the passage already cited, respecting personal goods bailed to á woman. Of such things the husband is not possessed in his own right,- but in right of the wife, and holds as she held. He takes as
 
 husband
 
 and holds as bailee, as was said in
 
 Collier
 
 v.
 
 Poe,
 
 1 Dev. Eq. Rep. 55, where this point was decided. The possession was never therefore adverse, so as to give operation to the statute. It is the opinion of the Court that the plaintiff has no legal title and therefore the judgment must be affirmed.
 

 Per Curiam. •. Judgment affirmed.