MRS. ALMA S. GRIFFIN v. C. M. GRIFFIN, THE NATIONAL BANK OF ROCKY MOUNT, AND J. P. BUNN, TRUSTEE.

(Filed 17 February, 1926.)

**1. Dower—Inchoate and Consummate Right.**

The right of dower of the wife in the lands of her husband is inchoate during his life, which becomes consummate in his widow at his death.

**2. Same—Deeds and Conveyances—Mortgages—Collateral Security for Husband's Debt.**

The wife by joining in her husband's mortgage given on his lands, may convey as additional security to his debt, her inchoate right of dower. C. S., 4102.

**3. Same—Foreclosure.**

A deed of trust given by the husband and joined in by the wife unreservedly of her inchoate right of dower, may be foreclosed under its terms and conditions to pay off the debt it secures, and completely bar the inchoate right of dower.

**4. Same—Equity.**

Equity will not interfere in behalf of the wife who has unreservedly joined in a mortgage on her husband's lands, to restrain the sale according to the terms of the instrument, by first ordering a foreclosure sale of the lands outside of the wife's inchoate interest, and if not sufficient, subject her interest to sale for the payment of her husband's debt.

APPEAL by defendants from *Barnhill, J.,* at January Term, 1926, of NASH. Error.

The following findings of fact and judgment was rendered by the court below:

"1. Defendant, C. M. Griffin, on 8 December, 1919, executed and delivered to defendant, J. P. Bunn, trustee, the deed in trust conveying the land mentioned in the pleadings, to secure five notes in the sum of $1,000 each, maturing on 8 December, 1920, 1921, 1922, 1923 and 1924, respectively. Said sum of $5,000 evidenced by said notes was the balance due on the purchase money for said land described in the pleadings and said trust deed was a purchase-money mortgage.

"2. The plaintiff, who is the wife of defendant, C. M. Griffin, joined in the execution of said notes as surety and likewise joined in the execution of said trust deed for the purpose of conveying her inchoate right of dower as collateral security for payment of said notes.

"3. All of said notes have been paid except the sum of $2,250, which is now due thereon, and which balance is now held by the defendant, the National Bank of Rocky Mount, a purchaser in due course for value before maturity. There are also due on said property certain taxes and street paving assessments assigned to and held by said bank.

"4. There being a default in the payment of said notes, the defendant, J. P. Bunn, trustee, at the request of the holder thereof, after due advertisement, offered the land described in said trust deed for sale at public auction in strict accord with the terms of said trust deed, on 22 December, 1925, when the defendant, the National Bank of Rocky Mount, became the last and highest bidder in the sum of $7,000.

"5. On the tenth day after said sale, and before the execution of any deed thereunder this action was instituted, and the temporary restraining order herein issued was served on the defendants.

"6. More than ten days have now elapsed since said sale and no advanced bid has been made and no order of resale has been entered by the clerk.

"Upon the foregoing facts the court being of the opinion that the plaintiff is entitled to have said land first sold subject to her dower interest so as to preserve and protect her inchoate right of dower and in so far as possible, free the same from the lien of said trust deed.

"It is ordered and adjudged that the defendants, J. P. Bunn, trustee, readvertise and resell the said property under the terms thereof, first offering for sale said land subject to plaintiff's inchoate right of dower therein; and in the event said property when so sold brings a sufficient amount to pay said debt, including costs of sale, taxes, paving assessments due, the said defendant is forever enjoined and restrained from selling or conveying plaintiff's inchoate right of dower therein. Should said land when so sold fail to bring a sufficient amount to pay the items herein enumerated, then and in that event, said trustee may forthwith at the same time and place sell the tract in fee, including plaintiff's interest therein."

The defendants duly excepted to the judgment, assigned error and appealed to the Supreme Court.

*Douglass & Douglass and Finch & Vaughan for plaintiff.*
*Battle & Winslow for defendants.*

CLARKSON, J. *Varser, J.,* speaking to the subject of dower in *Pridgen v. Pridgen,* 190 N. C., p. 107, says: "Dower has long been a favorite of the law, ranking with life and liberty (Bacon Uses, p. 37), and showing a firm establishment in the Year Books, and probably originating from a Danish custom, 'since' as Blackstone recalls, 'according to historians of that country, dower was introduced into Denmark by Swein, the father of Canute, out of gratitude to the Danish ladies who sold all their jewels to ransom him when taken prisoner by the Vandals. However this be, the reason which our law gives for adopting it is a very plain and sensible one: for the sustenance of the wife and the rearing and education

of the younger children.' Since these early times the right of dower has been highly favored by the courts. 9 R. C. L., 563; *Hodge v. Powell,* 96 N. C., 64; *McMorris v. Webb,* 17 S. C., 558; *Lewis v. Apperson,* 103 Va., 624."

The land dowable "one-third in value of all the lands, tenements and hereditaments, both legal and equitable, of which her husband was beneficially seized, in law or in fact, at any time during coverture, and which her issue, had she had any, might have inherited as heir to the husband." *Chemical Co. v. Walston,* 187 N. C., 823; *Pridgen v. Pridgen, supra.* Upon the death of the husband the dower becomes consummate. During the lifetime of the husband it is inchoate. The wife, during the lifetime of her husband, by proper conveyance, can alienate her inchoate right of dower. The wife joining with her husband in deed of conveyance and privy examination. C. S., 4102.

It was argued here that the learned and painstaking judge in the court below, who heard this case, based his decision upon *Chemical Co. v. Walston, supra,* and held "that the inchoate doweress was entitled to have the trustee first offer the land for sale, subject to her inchoate dower, to ascertain if the mortgage could be retired when so sold; and, in the event of the land failing to bring enough when so sold, it might be sold free from dower."

From a careful reading of the *Walston case, supra,* it will be noted that case was a controversy without action. All parties were before the Court and the dower was consummate, and *Stacy, C. J.,* carefully sets forth the rights of the widow. At p. 824, it is said: "It therefore follows that in determining the widow's dower, the value of the land, without deducting the mortgage debt, would form the basis of computation. *Caroon v. Cooper,* 63 N. C., 386; *Creecy v. Pearce,* 69 N. C., 67; *Gwathmey v. Pearce,* 74 N. C., 398; *Askew v. Askew,* 103 N. C., 285. The widow's dower is not liable for the debts of her husband, except as she may charge the same by conveying her right of dower as collateral security for said debts or any part thereof. When a wife executes a mortgage with her husband she thereby conveys her dower in the property described therein as security for the payment of the debt mentioned in the mortgage. *Gore v. Townsend,* 105 N. C., 232." It will be further observed that in the *Walston case,* the mortgagee was not undertaking to sell under the power, but by foreclosure in equity. All parties were before the Court at the instance of the mortgagee, and the widow was claiming her dower then consummate. This is not our case.

In the present case, the extraordinary remedy of injunction, is sought by plaintiff to stop the doing of a thing authorized by her to be done. In accordance with the statute she joins in a conveyance with her husband. From the finding of facts: "The plaintiff, who is the wife of

defendant, C. M. Griffin, joined in the execution of said notes as surety and likewise joined in the execution of said trust deed for the purpose of conveying her inchoate right of dower as collateral security for payment of said notes."

In the deed in trust to J. P. Bunn, trustee, she contracts that "if said indebtedness or any part thereof, shall not be paid in full with all interests at maturity," etc., the holder of any unpaid notes (now the plaintiff) "shall advertise said land for thirty days at the courthouse door in Nash County and three other public places in said county, and sell the same at a time and place named in the notice of advertisement at public auction, for cash (at which sale the owner of said notes shall have full power to bid) and out of the proceeds pay, first whatsoever may be due on notes due 8 December, 1920, 21, 22 and 23, and then note due 8 December, 1924, and all expenses of selling, including five per cent commission on the gross proceeds of sale of all property herein described for his services, and the surplus, if any, pay to the said C. M. Griffin."

In the finding of facts this was done "in strict accord with the terms of said trust deed," etc.

Plaintiff had the right to make this contract in the manner provided by law, which was done and contracted that her inchoate dower right could be sold, which was done in accordance with the contract. She now asks that this contract be rescinded and the land be sold subject to her inchoate dower right in the very teeth of her agreement that the whole be sold. We cannot so hold. It nowhere appears in the record that the land is susceptible of division and asked to be sold in parcels and then as a whole. It appears that it is a city house and lot, and from the dimensions incapable of division for beneficial purposes. What rights she has in the surplus after the payment of the debts is not before us, although she authorizes the trustees to pay the surplus to her husband.

In *Leak v. Armfield,* 187 N. C., p. 628, it was said: "In *Lea v. Johnson,* 31 N. C., 19, *Pearson J.,* said: 'Hard cases are the quicksands of the law. In other words, a judge sometimes looks so much at the apparent hardship of the case as to overlook the law.' In *Cureton v. Moore,* 55 N. C., 207, it was said: 'A court of equity can no more relieve against "hard cases" unless there be some ground of equity jurisdiction, than a court of law, for both courts act upon general principles. Equity, as well as law, is a science, and does not depend upon *the discretion* of the court entrusted with equity jurisdiction, or the vague ideas that may be entertained as to hard cases.' ¯. . . It may be 'hard measure' to sell, but this is universally so. The mortgagee has a right to have her contract enforced under the plain terms of the mortgage. To hold otherwise would practically nullify the present system of mortgages and deeds in trust on land, so generally used to secure indebtedness and seriously

hamper business. Those interested in the equity of redemption have the right of paying off the first lien when due. We can see no equitable ingredient in the facts of this case. The mortgage is not a 'scrap of paper.' It is a legal contract that the parties are bound by. The courts, under their equitable jurisdiction, where the amount is due and ascertained—no fraud or mistake, etc., alleged—have no power to impair the solemn instrument directly or indirectly by nullifying the plain provisions by restraining the sale to be made under the terms of the mortgage."

For the reasons given, there was error in the judgment below.

Error.